**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

OPTUMCARE MANAGEMENT, LLC,

      Plaintiff,

v.                        No. 20-cv-00474 RB-SCY
                        Consolidated with No. 20-cv-00817 SWS-MLC

KRISTINA GUTIERREZ-BARELA, MD,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

      Defendant Kristina Gutierrez-Barela, MD signed a Noncompetition and Nonsolicitation Agreement (the "Agreement") in 2012 with HealthCare Partners, LLC (HCP), a predecessor to Plaintiff OptumCare Management, LLC. In relevant part, the Agreement provided that for two years after Gutierrez-Barela's employment ended, she would be unable to practice medicine within a defined geographical area. Gutierrez-Barela voluntarily terminated her employment with OptumCare in June 2019 and began working as a physician within the restricted area before two years had elapsed. OptumCare filed this lawsuit for breach of the Agreement or for unjust enrichment.

      Gutierrez-Barela moves to dismiss on the basis that the Agreement is against public policy or is otherwise unenforceable. Alternatively, she asks the Court to either abstain from deciding this matter and remand a related case to the state district court, or to certify a question to the New Mexico Supreme Court. Having considered the parties' arguments and the relevant law, the Court will deny the motion.

1

## I.      Factual Background[1]

OptumCare is a limited liability company. (Doc. 35 (Am. Compl.) ¶ 1.) OptumCare has

undergone "a series of name changes, from [HCP] to DaVita Medical Management, LLC[,]" and

finally to OptumCare. (*Id.*) Gutierrez-Barela is a physician and was, in 2012, "a Member of

Medical Group Holding Company, LLC." (*Id.* ¶ 11.) On July 24, 2012, she entered into a Merger

Agreement between Medical Group Holding Company, LLC and OptumCare's predecessor,

HCP.[2] (*Id.* ¶ 12.) As part of the Merger Agreement, Gutierrez-Barela and HCP executed the

Agreement at issue in this lawsuit. (*Id.*; *see also* Doc. 35-B.) In relevant part, the Agreement

provided:

> 1.      Member agrees that for a period (the "Non-Compete Term")
> beginning on the date hereof and continuing until the time that is 2 years from and
> after Member ceases to be an employee of . . . the Company or its affiliates for any
> reason, Member will not own, acquire or have any other financial interest . . . in
> any medical group, independent practice association or management services
> organization that provides management services to physicians or in any other
> business that provides medical services to Plan enrollees located within the Service
> Area . . . . "Service Area" shall mean the four-county area comprising Bernalillo
> County, Sandoval County, Torrance County and Valencia County, New Mexico
> and any location within 20 miles from Member's current primary practice location
> or at a location within 20 miles from the other practice locations of any of the ABQ
> Parties, in either case whether within or outside of such four-county area.
> 2.      In addition, Member agrees that during the Non-Compete Term,
> Member shall not (a) be engaged as an employee, officer, director, agent or
> consultant . . . with any medical group, independent practice association, hospital
> or clinic or other organization that is affiliated with a hospital, that provides medical
> services to Plan patients, or any management services organization that provides
> management services to physicians, nor shall Member provide medical services as
> a solo practitioner, where the Member's services are provided at a location within
> the Service Area, . . . and/or (b) recruit, solicit or otherwise seek to induce any
> person or entity that (i) provides services to HCP or any affiliate of HCP (including
> the Company) to terminate his or her employment or independent contractor
> relationship or violate any agreement with HCP or such affiliate or (ii) receives

---

[1] The Court recites the facts relevant to this motion as they are derived from the First Amended Complaint
for Breach of Agreement Not to Compete (Doc. 35 (Am. Compl.)) and the exhibits attached thereto.

[2] OptumCare asserts that despite the name change, it "is the same entity with whom Dr. Gutierrez-Barela
entered the . . . Agreement." (*Id.* ¶ 1.)

primary care medical services under any ABQ Plan Contract to receive primary care medical services from any provider other than through the Company.

(Doc. 35-B ¶¶ 1–2 (underlining omitted).)

Gutierrez-Barela "voluntarily terminated her employment with [OptumCare]" on June 18, 2019. (Am. Compl. ¶ 18.) Before the two-year non-compete term had expired, she began working as a physician within 20 miles from her former primary practice location contrary to the Agreement. (*Id.* ¶ 19.) She has also recruited OptumCare's employees and contractors. (*Id.* ¶ 20.) OptumCare alleges that these actions breached the parties' 2012 Agreement. (*See id.* ¶¶ 19–21, 23.)

The Agreement provides that "within 30 days of any violation of this Agreement by Member," the Member will "pay as damages to HCP an amount equal to the Merger Consideration received by such Member pursuant to the Merger Agreement, which payment shall be HCP's sole remedy for such breach." (Doc. 35-B ¶ 4.) OptumCare gave Gutierrez-Barela $662,479.72 as Merger Consideration. (Am. Compl. ¶ 24.) OptumCare asserts a claim for breach of the Agreement, or alternatively, for unjust enrichment. (*See id.* at 2, 5.)

## II.     The Court will deny the motion to dismiss.

### A.     Legal Standards

#### 1.     Motions to Dismiss under Rule 12(b)(6)

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). To survive a motion to dismiss, the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

### 2.    Judicial Notice

"[W]hile ordinarily, a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, *see* Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect . . . ." *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*, 825 F. Supp. 2d 1082, 1122 (D.N.M. 2011) (citation omitted). Gutierrez-Barela asks the Court to take judicial notice of seven documents: (1) a summary of data from the federal Health Resources and Services Administration (HRSA) that identifies "Medically Underserved Areas/Populations in New Mexico (*see* Doc. 37 at 4 (citing Doc. 5-1)); (2) a summary of data from the HRSA that identifies "Health Professional Shortage Areas" in New Mexico (*id.* (citing Doc. 5-2)); (3) a declaration from the Executive Director of the New Mexico Medical Society discussing N.M. Stat. Ann. § 24-1I-2(a), relating to the enforceability of physician non-compete agreements (*id.* at 5 (citing Doc. 13-1)); (4) a declaration from a New Mexico state senator discussing § 24-1I-2(a) (*id.* at 6 (citing Doc. 13-2)); (5) a summary of data about Medicaid in New Mexico from the Kaiser Family Foundation (KFF) (*id.* at 5 n.4 (citing Medicaid in New Mexico, https://files.kff.org/attachment/fact-sheet-medicaid-state-NM (Oct. 2019)); (6) a 2011 press release announcing the "Optum brand" (*id.* at 7 n.6 (citing *UnitedHealth Group Announces "Optum" Master Brand for its Health Services Businesses*, UnitedHealth Group, https://www.unitedhealthgroup.com/newsroom/2011/0411optum.html (Apr. 11, 2011)); and (7) a 2019 article regarding Optum's acquisition of DaVita (*id.* at 8 n.8 (citing *Optum completes acquisition of DaVita Medical Group from DaVita*, Optum, https://www.optumcare.com/about/news/optum-completes-acquisition-davita.html (July 19,

2019)).)

Regarding the data from the HRSA and the KFF, Gutierrez-Barela asserts that "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web." (*Id.* at 10–11 (quoting *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 702 n.22 (10th Cir. 2009)).) The Court may only take judicial notice of such information, though, if it is "not subject to reasonable factual dispute and [is] capable of determination using sources whose accuracy cannot reasonably be questioned . . . ." *Richardson*, 565 F.3d at 702 n.22. In *Richardson*, for example, the Tenth Circuit took judicial notice of the fact that falcons had been released into a specified area. *See id.* at 702. The court found that this fact was not reasonably disputed and was capable of determination using three accurate sources: the websites of two federal agencies and minutes from a state advisory council. *Id.* at 702 n.22. In *ETP Rio Rancho Park, LLC v. Grisham*, the court took judicial notice of two state executive orders "to provide context to [a] current state of the Public Health Emergency." No. CIV 21-0092 JB/KK, 2021 WL 4478383, at *2 n.1 (D.N.M. Sept. 30, 2021) (citations omitted). The "facts" Gutierrez-Barela asks the Court to take judicial notice of do not fall within this category. The HRSA and KFF documents compile data without adequate explanation. And as OptumCare points out, this data is "not uncontroverted and [OptumCare] can produce evidence to dispute" it. (Doc. 38 at 4 n.3 (citing *KidsKare, P.C. v. Mann*, 350 P.3d 1228, 1233 (N.M. Ct. App. 2015)).)

Nor will the Court take judicial notice of the two articles about OptumCare. Gutierrez-Barela cites one article to support a statement that UnitedHealth Group "sells medical care services under its 'Optum' brand[,]" a fact that does not seem to be at issue in the motion or central to OptumCare's Amended Complaint. (*See* Doc. 37 at 7 n.6 (citation omitted).) She cites another article to support her argument that the Agreement was not *assigned* to OptumCare, because

OptumCare *bought* DaVita. (*See id.* at 8 n.8.) Yet this assertion contradicts the Amended Complaint's allegations and is clearly a factual dispute that is not appropriate for consideration at this stage. (*See* Am. Compl. ¶ 1.)

Similarly, the Court finds that the two declarations are not appropriate to consider in analyzing the motion to dismiss. The declarations are related to the public policy considerations behind N.M. Stat. Ann. § 24-1I-2, and Gutierrez-Barela cites them to bolster her position that the state legislature would find the Agreement here is contrary to public policy. (*See* Doc. 37 at 7, 11.) The declarations are evidence of a factual dispute that is not appropriate for resolution on a motion to dismiss.

In short, because Gutierrez-Barela asks the Court to take notice of material that is neither included in the Amended Complaint nor central to its claims, consideration of the material would require the Court to convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P. 12(d). The Court declines to do so. For these reasons, the Court finds it inappropriate to take judicial notice of the material in considering the motion to dismiss.

### 3.     Timeliness

OptumCare asks the Court to deny Gutierrez-Barela's motion as untimely. (Doc. 38 at 3.) OptumCare filed its Amended Complaint on April 5, 2021, making the response due by April 19, 2021. (*Id.* at 3 n.1 (citing Fed. R. Civ. P. 15).) OptumCare "agreed to several courtesy extensions[,]" with the most recent extension allowing Gutierrez-Barela to file a response no later than May 10, 2021. (*See id.*) On May 20, Gutierrez-Barela's counsel filed the motion to dismiss and belatedly asked for another courtesy extension, to which OptumCare did not agree. (*See id.*; *see also* Doc. 38-1.) Gutierrez-Barela's late filing is troublesome for the reasons OptumCare describes in its response. (*See* Doc. 38 at 3.) The Court prefers, however, to reach the merits of the

motion, rather than denying it on procedural grounds. Yet again, the Court cautions Gutierrez-Barela's counsel to review and abide by the relevant federal and local rules. (*See, e.g.*, Doc. 36 at 2–3.)

> **B.     Analysis**

Gutierrez-Barela asks the Court to dismiss the Amended Complaint on three bases. She argues that: (1) a physician non-compete agreement is contrary to New Mexico public policy; (2) there was no valid assignment of the Agreement to OptumCare; and (3) the Agreement was an "evergreen" contract and is unenforceable on its face or was terminable at will. (*See* Doc. 37 at 2–3.)

> **1.     Gutierrez-Barela has not established that the Agreement is contrary to public policy.**

Gutierrez-Barela first argues that OptumCare's lawsuit should be dismissed because enforcement of the Agreement is contrary to New Mexico public policy. (*See id.* at 11.) She references a 2015 statute that declared certain physician non-compete agreements unenforceable. (*See id.* at 5 (citing N.M. Stat. Ann. § 24-1I-2).) The statute provides:

> A non-compete provision in an agreement, which provision restricts the right of a health care practitioner to provide clinical health care services in this state, shall be unenforceable upon the termination of:
> (1) the agreement;
> (2) a renewal or extension of the agreement; or
> (3) a health care practitioner's employment with a party seeking to enforce the agreement.

N.M. Stat. Ann. § 24-1I-2(A).

Gutierrez-Barela concedes that the 2015 statute does not apply retroactively and, therefore, does not operate to invalidate the parties' 2012 Agreement. (*See* Doc. 37 at 11.) *See also* N.M. Stat. Ann. § 24-1I-5(B) ("Except as provided by Subsection C of this section, the provisions of Chapter 24, Article 1I NMSA 1978 apply to agreements, or renewals or extensions of agreements,

executed on or after July 1, 2015."). She argues, though, that the New Mexico legislature enacted the statute to prevent physicians from leaving New Mexico communities; "thus the public policy behind the statute weighs against enforcement of the" Agreement. (*See* Doc. 37 at 11.)

OptumCare responds that "if the legislature intended for this statute to address a doctor shortage amongst physicians with *existing* non-compete agreements, the legislature could have broadened the scope of applicability [but] chose not to."[3] (Doc. 38 at 6.) The Court agrees. "[T]he general rule is that statutes apply prospectively unless the Legislature manifests clear intent to the contrary." *Gallegos v. Pueblo of Tesuque*, 46 P.3d 668, 680 (N.M. 2002). "[W]hen a statute affects vested or substantive rights, it is presumed to operate prospectively only." *Id.* (quoting *Swink v. Fingado*, 850 P.2d 978, 982 (N.M. 1993)). Here, the Legislature expressed a clear intent that the statute be applied prospectively. As Gutierrez-Barela has not mounted an argument to otherwise convince the Court that enforcement of the Agreement is against New Mexico public policy, the Court will not dismiss the Amended Complaint on this ground.

## 2. According to the allegations in the Amended Complaint, the Agreement was not assigned.

Gutierrez-Barela next argues that the Court should dismiss this action on the basis that the Agreement was assigned to OptumCare without her consent and is, therefore, unenforceable. She asserts that the Agreement is a contract for personal services and "is not assignable without the consent of both parties." (Doc. 37 at 11–12 (quoting *Roeder v. Ferrell-Duncan Clinic, Inc.*, 155 S.W.3d 76, 84 (Mo. Ct. App. 2004) (subsequent citations omitted)).) Similarly, she maintains that

---

[3] OptumCare also argues that a second statutory exclusion applies to the Agreement here: § 24-1I-5(A) provides that "Chapter 24, Article 1I NMSA 1978 does not apply to agreements between health care practitioners who are shareholders, owners, partners or directors of a health care practice." OptumCare asserts that Gutierrez-Barela "was a shareholder when she executed her agreement, so" § 24-1I-2(A) is inapplicable. (Doc. 38 at 8.) Gutierrez-Barela does not respond to this argument. (*See* Doc. 41 at 5–6.) If this provision applies to the Agreement, it weighs against her public policy argument.

"employee non-compete agreements are not assignable to successor employers following mergers and acquisitions without the express consent of the employee." (*Id.* at 13 (citing *Hess v. Gebhard & Co.*, 808 A.2d 912, 921 (Pa. 2002)).)

Gutierrez-Barela's argument fails, however, because taking the Amended Complaint's allegations as true, the Agreement was never *assigned*. "[OptumCare] expressly alleges [in the Amended Complaint] that there was a series of name changes—from [HCP] to Davita . . . and thence, in turn, to OptumCare[,]" which is the "one and same entity . . . [with] whom [Gutierrez-Barela] executed the Agreement." (Doc. 38 at 12 (citing Am. Compl. ¶ 1; Doc. 35-A).) And "in the absence of an assignment, no consent to assignment is necessary." (*Id.* (citing *Corp. Express Office Prods. v. Phillips*, 847 So. 2d 406, 415 (Fla. 2003) ("neither a change in the ownership of corporate stock nor a name change alters a corporation's existence, corporate identity, or corporate rights"; thus "no additional assignments necessitating the employees' consent are required to enable [the corporation] to seek enforcement of the noncompete agreements") (citation omitted)).)

Gutierrez-Barela asserts that, "[p]urely to avoid dismissal under 12(b)(6), [OptumCare] amended its complaint to remove any reference to ownership change and to disclaim any assignment." (Doc. 41 at 4.) That remains to be seen. For now, the Court must take the allegations of the Amended Complaint as true. "[OptumCare] is the same entity with whom Gutierrez-Barela entered the . . . Agreement." (Am. Compl. ¶ 1.) HCP did not sell to DaVita, nor DaVita to OptumCare; rather, the entity simply changed its name. (*See id.*) A name change is not an assignment. *See* 6 Am. Jur. 2d *Assignments* § 1 (1999) ("An 'assignment' is a transfer of property or some other right from one person (the 'assignor') to another (the 'assignee')"); *see also Benton v. Albuquerque Nat'l Bank,* 701 P.2d 1025, 1030 (N.M. Ct. App. 1985) ("An assignment is an act or expression of intention by which one person causes a transfer of a right or interest in property.")

(citation omitted). Because OptumCare is neither a subsequent purchaser nor a subsequent employer, there was no need for Gutierrez-Barela to consent to an assignment of the Agreement. The Court will not dismiss the Amended Complaint on this basis.

### 3. Gutierrez-Barela has not established that the Agreement is an "evergreen" contract prohibited by New Mexico law.

Finally, Gutierrez-Barela moves to dismiss on the basis that "New Mexico law does not permit a health care system . . . to permanently and indefinitely restrict a physician's ability to practice medicine in New Mexico under a purported 'evergreen' noncompetition agreement." (Doc. 37 at 16.) She contends that New Mexico law requires contracts to "have definitely ascertainable dates of commencement and termination . . . determinable from the recitations in the contract itself . . . ." (*Id.* (quoting *Greer v. Stanolind Oil & Gas Co.*, 200 F.2d 920, 922 (10th Cir. 1952)).) As the Agreement here does not contain a concrete termination date, she believes that it is unenforceable. (*See id.*) The Court disagrees that the Agreement is indefinite. The Agreement explicitly states that it will end "[two] years from and after Member ceases to be an employee of" OptumCare. (*See* Doc. 35-B ¶ 1.) Consequently, her reliance on *McCasland v. Prather* for the proposition "that contracts for an indefinite period of time may be terminated at the will of either party[,]" is off base.[4] (*See* Doc. 37 at 16 (quoting *McCasland*, 585 P.2d 336, 342 (N.M. Ct. App. 1978) (Sutin, J., dissenting)).)

Gutierrez-Barela cites no New Mexico law directly on point. She relies on *Greer*, but that case is also inapposite. "In *Greer*, the question was whether the term of the lease ran from the day

---

[4] The *McCasland* court was called on to determine whether a valid requirements contract existed where the parties had not specified the price or the duration of performance. 585 P.2d at 339–40. Relying on the UCC, the court found that though the contract did "not spell out the duration of the contract, . . . in the absence of specific time provisions, the contract is valid for a reasonable time." *Id.* at 340–41 (citing UCC 50A-2-309; *Nat'l Civil Serv. League v. City of Santa Fe, N.M.*, 370 F. Supp. 1128 (D.N.M. 1973)). As the parties' Agreement here is not a requirements contract, *McCasland* is not controlling.

it was executed, or from the day it was delivered." *Summit Elec. Supply Co. v. Int'l Bus. Machs. Corp.*, No. 1:07-CV-0431 MCA/DJS, 2009 WL 9087259, at *17 (D.N.M. Sept. 30, 2009) (discussing *Greer*, 200 F.2d at 922). "The Tenth Circuit simply examined the recitations in the lease, held that there was no reason to resort to extrinsic evidence to determine the parties' intent, and concluded that the term ran one year from the date of execution." *Id.* (citing *Greer*, 200 F.2d 922–23).

Gutierrez-Barela relies on *Padilla v. RRA, Inc.*, in which the defendant argued that a contract failed for indefiniteness. 946 P.2d 1122, 1124 (N.M. Ct. App. 1997). The court of appeals agreed that "[i]ndefiniteness can defeat a contract claim" if it "indicate[s] that the parties failed to reach an agreement" or if the terms of the contract are not "reasonably certain." *Id.* at 1125 (citations omitted). Yet the *Padilla* court did not analyze either an evergreen contract or a non-compete agreement. Rather, the defendant in *Padilla* believed the contract failed because it did not contain a specific commission rate. *See id.* at 1124. Thus, *Padilla* does not support Gutierrez-Barela's argument that the Agreement here is unenforceable. *See Summit Elec. Supply Co.*, 2009 WL 9087259, at *17 (noting that "*Padilla* does not stand for the proposition that a contract of indefinite duration is against public policy").

Finally, Gutierrez-Barela cites to *R.S. Mikesell Associates v. Grand River Dam Authority*, 627 F.2d 211 (10th Cir. 1980). (Doc. 37 at 16.) In that case, the Tenth Circuit held that an employment contract with no specified duration can still be enforced, "inasmuch as its duration can be fairly implied from the contract's subject matter." *See Cholier, Inc. v. Torch Energy Advisors, Inc.*, 83 F.3d 431, at *4 (10th Cir. 1996) (discussing *R.S. Mikesell*, 627 F.2d at 212–13). *R.S. Mikesell* is not on point, however, as the Tenth Circuit applied Oklahoma law. *See id.* Moreover, Gutierrez-Barela cites *R.S. Mikesell* for the proposition that "most courts considering

11

contracts for an indefinite period of time, lifetime or long duration[,] . . . have struck them down as unreasonably binding the hands of future directors." 627 F.2d at 216 (Logan, J., concurring in part) (citations omitted). Again, however, the parties' Agreement specifies a non-compete period of two years.[5]

OptumCare argues that Gutierrez-Barela's "characterization of the agreement as 'indefinite' and 'evergreen' is" contrary to law, the allegations of the Complaint, and the Agreement itself. (Doc. 38 at 4.) It contends that while Gutierrez-Barela describes the Agreement as "'evergreen' because it has no end date" (*see* Doc. 37 at 16), that is not the true definition of an evergreen contract. According to Black's Law Dictionary, an evergreen contract automatically renews at the end of its term and "[c]ontinues unless any involved party cancels the agreement." Evergreen Contract, Black's Law Dictionary, https://thelawdictionary.org/evergreen-contract/ (last visited Nov. 19, 2021).[6] OptumCare asserts that "[n]o such clause appears in the Agreement." (Doc. 38 at 5.) Gutierrez-Barela responds that the Black's Law definition is unhelpful here, where the "contract is unenforceable because it has no term that could be renewed." (Doc. 41 at 5 (emphasis omitted).) Under the facts available, however, the term of the non-compete agreement

---

[5] Gutierrez-Barela further asserts that "a physician could theoretically be employed . . . for 100 years and still be subject to a [two-]year non-compete" agreement. (Doc. 41 at 5.) Yet, this conflates an argument about whether the term of her *employment* is enforceable with whether the term of the *non-compete agreement* is enforceable. It is unclear from the Amended Complaint or the documents attached thereto what the duration of Gutierrez-Barela's employment is under the contract. Regardless, Gutierrez-Barela fails to cite binding authority to support a finding that the term of her *employment* is unenforceable.

[6] Williston on Contracts provides this example of an evergreen clause:
> It is agreed by both parties that this Agreement shall remain in full force and effect through [specified date] and from year to year thereafter unless written notice of intent to terminate or modify the Agreement be submitted, at least sixty (60) days prior to the expiration date by either party to the other.

*Technical provisions*, 20 Williston on Contracts § 55:53 (4th ed.); *see also, e.g.*, John C. Muhs, *Evergreen Clauses Still A Useful Commercial Contracting Tool, But Not Without Pitfalls*, Mich. B.J., Sept. 2018, at 22, 23 ("A typical evergreen clause generally provides that the term of an agreement will automatically renew for subsequent periods of the same length unless either party provides written notice of termination to the other party within some minimum period before the current term expires.").

is two years, and there is no clause that provides for automatic renewal. (*See* Doc. 35-B ¶ 1.)

Neither party cites to a relevant New Mexico case concerning evergreen provisions, nor has the Court found one that would dictate a decision in Gutierrez-Barela's favor. The few New Mexico cases to discuss evergreen provisions deal with collective bargaining agreements. *See, e.g.*, *Am. Fed'n of State Cnty. & Muni. Emps. v. Albuquerque Bernalillo Cnty. Water Util. Auth.*, No. 31,365, 2013 WL 5309924, at *1 (N.M. Ct. App. Aug. 8, 2013); *Am. Fed'n of State, Cnty. & Mun. Emps., Council 18 v. City of Albuquerque*, 293 P.3d 943, 948 (N.M. Ct. App. 2012). In the 2012 case, the court noted that the "evergreen clause requires expiring collective bargaining agreements to continue until replacement agreements are in place." 293 P.3d at 948 (citation omitted). And in the 2013 case, the court "note[d] that an evergreen provision would have continued the pre-existing [collective bargaining agreements] beyond their looming expiration date and until the parties' differences could be resolved through mediation." 2013 WL 5309924, at *1. The discussion of evergreen provisions in both cases follows the Black's Law dictionary definition.[7]

In sum, Gutierrez-Barela has not cited binding authority to support a finding that the parties' non-compete agreement is an evergreen contract or that New Mexico courts would decline to enforce it as written. The Court will deny the motion to dismiss.

## III.   The Court will not abstain from ruling.

Citing the *Colorado River* abstention doctrine, Gutierrez-Barela asks the Court to "abstain from deciding these various unsettled state law questions and . . . remand the declaratory judgment action to state court to resolve the threshold question of enforceability." (Doc. 37 at 18.) The *Colorado River* abstention doctrine allows "a federal court . . . [to] stay or dismiss a federal suit

---

[7] The fact that the Agreement is labeled "Member Evergreen Form" makes no difference. Regardless whether the title describes the form as "evergreen," there is no evergreen clause in the body of the Agreement itself. *See, e.g.*, 17A Am. Jur. 2d Contracts § 372 ("Although courts may consider the title of a contract provision or section to interpret a contract, the greater weight must be given to the operative contractual clauses of the agreement.").

pending resolution of a parallel state court proceeding." *THI of N.M. at Vida Encantada, LLC v. Lovato*, 848 F. Supp. 2d 1309, 1318 (D.N.M. 2012) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

"Declining to exercise jurisdiction based on the *Colorado River* doctrine is appropriate only in 'exceptional' circumstances." *Id.* (citing *Colo. River*, 424 U.S. at 818). Courts engage in a two-step analysis to determine whether the circumstances of a case are "exceptional." To begin, the Court "must determine whether the state and federal proceedings at issue are indeed parallel." *THI of N.M. at Vida Encantada*, 848 F. Supp. 2d at 1318 (citing *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994)). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* (quoting *Fox*, 16 F.3d at 1081). If the proceedings are parallel, the Court will then consider the nonexclusive list of factors delineated in *Colorado River* and its progeny "in deciding whether 'exceptional circumstances' exist to warrant such deference . . . ." *Id.* at 1318–19 (quoting *Fox*, 16 F.3d at 1082).

OptumCare argues that the Court should deny the request to abstain because there are no parallel proceedings. (Doc. 38 at 19.) Gutierrez-Barela fails to respond to this point. (*See* Doc. 41.) The Court agrees with OptumCare's position. OptumCare filed this lawsuit on May 18, 2020. (Doc. 1.) Gutierrez-Barela filed a declaratory judgment action in the Second Judicial District Court of New Mexico on July 15, 2020, and OptumCare removed it to this Court on August 13, 2020. *See Gutierrez-Barela v. OptumCare N.M. LLC*, No. 20cv0817 SWS-MLC, Notice of Removal (D.N.M. Aug. 13, 2020). Because the cases are in the same forum, the proceedings are not parallel and abstention is not appropriate. *Cf. Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1121 (10th Cir. 2018) (finding that "first-to-file" rule, rather than *Colorado River* doctrine, should guide courts in deciding whether to abstain when parallel lawsuits are in different federal

district courts). The Court need not consider the *Colorado River* factors and will deny the motion to abstain.

## IV.     The Court will not certify a question to the state supreme court.

Finally, Gutierez-Barela asks the Court to certify a question regarding enforceability of the Agreement to the New Mexico Supreme Court. (Doc. 37 at 22–24.) "Under the Uniform Certification of Questions of Law Act, the New Mexico Supreme Court may answer a question of law certified to it if the 'answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state.'" *Hartford Ins. Co. of the Midwest v. Cline*, 367 F. Supp. 2d 1342, 1344 (D.N.M. 2005) (quoting N.M. Stat. Ann. § 39-7-4). "Federal courts have the option of determining what a state court would do if confronted with the same issue, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), or of certifying the question to the state appellate court for review, *see Allstate v. Stone*, 863 P.2d 1085, 1086 (N.M. 1993) ('This matter comes before us by way of certification from the United States District Court for the District of New Mexico.')." *Farm Bureau Mut. Ins. Co. v. Jameson*, 472 F. Supp. 2d 1272, 1280 (D.N.M. 2006) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974) ("The decision to certify a question to the state supreme court 'rests in the sound discretion of the federal court.'")). The Tenth Circuit cautions that "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (citation omitted). Indeed, "federal courts have the duty to decide questions of state law even if difficult or uncertain . . . ." *Copier ex rel. Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998) (citation omitted). When the Court can "see a reasonably clear and principled course, [it] will seek to follow it" without

15

troubling the state court. *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (citations omitted).

> limit[s its] acceptance of certifications prior to judgment to those cases in which there is no dispute over the factual predicates to the Court's determination of the questions certified, and [its] answer either disposes of the entire case or controversy, or disposes of a pivotal issue that defines the future course of the case.

As Gutierrez-Barela acknowledges, the New Mexico Supreme Court normally

(Doc. 37 at 23–24 (quoting *Schlieter v. Carlos*, 775 P.2d 709, 710–11 (N.M. 1989)).) Here, the parties disagree about several facts relevant to whether the Agreement is enforceable, including whether HCP or DaVita assigned the Agreement to OptumCare. Were the Court to certify a question to the supreme court, any opinion would be advisory and would not necessarily dispose of the ultimate issues in this case. Consequently, the Court will deny the motion to certify a question to the state supreme court.

**THEREFORE**,

**IT IS ORDERED** that the Motion to Dismiss Amended Complaint or, in the Alternative, Motion to Abstain or Certify Question (Doc. 37), is **DENIED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE