IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

OPTUMCARE MANAGEMENT, LLC,

    Plaintiff,

v.                                    No. 20-cv-00474 RB-SCY
                                      Consolidated with No. 20-cv-00817 SWS-MLC

KRISTINA GUTIERREZ-BARELA, MD,

    Defendant.

## MEMORANDUM OPINION AND ORDER

In 2012, Kristina Gutierrez-Barela, MD signed a Noncompetition Agreement (NCA) with an entity called HealthCare Partners, LLC (HCP), which restricted Gutierrez-Barela's ability to practice medicine within a defined geographical area after her employment with HCP ended. OptumCare Management, LLC (Optum or OptumCare), which claims to be a successor entity to HCP, filed a lawsuit against Gutierrez-Barela in 2020, alleging that she violated the terms of the NCA.

Gutierrez-Barela filed a complaint for declaratory judgment and injunctive relief against OptumCare, and the Court consolidated the two cases for consideration. Gutierrez-Barela also filed an answer and four counterclaims to OptumCare's lawsuit. Her counterclaims include tortious interference with existing contract and prospective business relations, common law unfair competition, violation of the New Mexico Antitrust Act (NMAA), and malicious abuse of process. OptumCare moves to dismiss all counterclaims. The Court will grant the motion in part and dismiss the counterclaims for tortious interference with existing contract and prospective business relations, common law unfair competition, and violation of the NMAA, and will deny the motion in part with respect to the malicious abuse of process claim.

I.      **Factual Background**[1]

Gutierrez-Barela has practiced as a physician in New Mexico for over 20 years. (Doc. 54 (Answer & Countercl.) at 9 ¶ 1.) In 2007, Gutierrez-Barela and other physicians "created a physician-owned medical group known as ABQ Health Partners[,]" and Gutierrez-Barela was considered a "member" of the company. (*Id.* ¶¶ 4–5.) In 2012, management of the company "recommended that the physician-owners of ABQ Health Partners agree to the sale of their interests to [HCP]."[2] (*Id.* at 10 ¶ 6.) Gutierrez-Barela agreed to the sale, but she had no input on the negotiation or terms of the sale or the resulting contract, nor did she sign the merger document. (*See id.* ¶¶ 8–11.) She "was instructed to sign the 2012 [NCA] as part of the sale, but had no bargaining power to alter its terms." (*Id.* ¶ 12.) The parties to the NCA are Gutierrez-Barela and HCP, and it does not contain an express provision that the NCA "can be assigned to successors or subsequent purchasers of ABQ Health Partners." (*Id.* at 11 ¶¶ 14, 16.) In November 2012, DaVita Inc. acquired HCP. (*Id.* ¶ 21.)

"OptumCare is a subsidiary affiliate of the national healthcare conglomerate UnitedHealth Group ('United')." (Am. Compl. ¶ 16.) In 2019, "Optum acquired certain components of DaVita, including ABQ Health Partners." (Answer & Countercl. at 11 ¶ 22.) Gutierrez-Barela "resigned from her employment with DaVita before it was acquired by Optum[,]" and she did not consent to the assignment of the NCA to DaVita or Optum. (*Id.* at 12 ¶¶ 23–24.)

Between the time Gutierrez-Barela signed the NCA and the time Optum acquired DaVita,

---

[1] The Court recites the facts relevant to this motion as they are derived from Gutierrez-Barela's Amended Complaint for Declaratory Judgment and Injunctive Relief (Doc. 69 (Am. Compl.)) and her Answer to Amended Complaint, Counterclaim and Jury Demand (Doc. 54 (Answer & Countercl.)). The Court resolves all factual disputes in favor of Gutierrez-Barela, the non-moving party.

[2] Gutierrez-Barela discusses entities called ABQ Health Partners, Health Partners LLC, ABQ Health Care Partners, and Healthcare Partners LLC. (*See* Answer & Countercl. at 9–10 ¶¶ 6–8; Am. Compl ¶¶ 23–24.) It is unclear how these entities are different, but the Court finds it can decide this motion without requiring further clarity on the issue.

the New Mexico Legislature passed legislation limiting non-compete provisions that restrict the right of physicians to practice in New Mexico. *See* N.M. Stat. Ann. § 24-1I-2. Gutierrez-Barela asserts that "Optum's business strategy is to use the [NCA] to prevent its employed physicians and their patients from having a choice to leave Optum's integrated health insurance and medical service business, thus trapping those patients and the revenues they generate within the United/Optum health system." (Answer & Countercl. at 12 ¶ 28.) She contends that Optum's business strategy "causes New Mexico physicians to relocate out-of-state[] and impairs the ability of New Mexico citizens[,]" many of whom are in areas designated as "medically underserved," "to obtain prompt and adequate health care." (*Id.* at 13 ¶ 37, 14 ¶ 41.)

Gutierrez-Barela brings four counterclaims: Count I: tortious interference with existing contract and prospective business relations; Count II: common law unfair competition; Count III: violation of the NMAA, N.M. Stat. Ann. § 57-1-1–19; and Count IV: malicious abuse of process.

## II.     Legal Standard for Motions to Dismiss under Rule 12(b)(6)

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all the well-pleaded allegations of the [counterclaim] as true and must construe them in the light most favorable to the [counterclaimant]." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). "To survive a motion to dismiss," the counterclaim does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

## III.    Analysis

### A.    Tortious Interference with Existing Contract and Prospective Business Relations

In Counterclaim I, Gutierrez-Barela asserts that OptumCare "used improper means" and

3

"acted with an improper motive to interfere with [her] potential treatment of patients." (Answer & Countercl. ¶¶ 45–46.) On its face, this counterclaim references both "existing contracts" and "prospective business relations," which are two distinct claims under New Mexico law. *See, e.g.*, *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, No. CV 08-1101 JB/RLP, 2009 WL 10699130, at *5–6 (D.N.M. Sept. 11, 2009) (outlining elements of each claim). OptumCare notes that claims for tortious interference of *existing* contracts do not apply to doctor-patient relationships because they are "at-will, and as such there is no existing contract at issue." (Doc. 58 at 17 (citing *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1285 (10th Cir. 2012); *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 640 (10th Cir. 2008); *Kelly v. St. Vincent Hosp.*, 692 P.2d 1350, 1356 (N.M. Ct. App. 1984)).) Gutierrez-Barela does not respond to OptumCare's argument on this point, other than to reiterate that OptumCare's conduct "can also . . . serve as the factual basis for tortious interference, whether existing or prospective." (Doc. 73 at 20.) The cases Gutierrez-Barela cites do not involve doctor-patient contractual relationships. (*See id.* at 19–21.[3]) Nor does she reference contractual relationships in Counterclaim I outside of doctor-patient relationships. (*See* Answer & Countercl. ¶¶ 44–47.)

In *Kelly*, the New Mexico Court of Appeals examined a physician's claim that a hospital "tortiously interfered with [the physician's] existing contractual relations with [his] patients." 692 P.2d at 1356. The *Kelly* court noted that New Mexico courts have adopted the Restatement (Second) of Torts Section 766B (1979). *Id.* "In comment g to Section 766, the Restatement

---

[3] She cites, for example, *N.M. Oncology & Hematology Consultants, Ltd v. Presbyterian Healthcare Servs.*, 54 F. Supp. 3d 1189, 1198 (D.N.M. 2014), where the court examined a claim for tortious interference of existing and prospective contract claims due to the "[d]efendants' alleged use of improper means to prevent and prohibit referrals to [the p]laintiff and out of [the d]efendants' alleged use of improper means to prevent [p]laintiff's patients from purchasing chemotherapy drugs from [p]laintiff and using [p]laintiff's chemotherapy infusion center." (*See* Doc. 73 at 19.) The only other medical-related case she cites in this section is *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 501 (3d Cir. 1998), a lawsuit that stemmed from the defendant's refusal to approve a new store's application for membership in defendant's "network of medical prescription providers." (*See* Doc. 73 at 20.) Neither case is on point.

4

discusses existing contracts which are terminable at will." *Id.* "An interest in a contract terminable at will is primarily an interest in future relations between the parties when the party has no legal assurance of the relation." *Id.* "For that reason, interference with these contracts is closely analogous to interference with prospective contracts." *Id.* The court found that the doctor-patient contracts "appear to be contracts at will" and only applied an analysis for tortious interference with *prospective* contracts to decide the claim. *Id.* As Gutierrez-Barela advances no argument to support a finding that OptumCare has interfered with anything but at-will doctor-patient relationships (*see* Doc. 73 at 19–21), the Court will follow *Kelly*'s lead and apply an analysis for tortious interference with prospective contractual relations. To the extent Gutierrez-Barela claims tortious interference with existing contractual relationships, the claim is dismissed.

OptumCare argues that to state a claim for interference with prospective relations, "[Gutierrez-]Barela must allege facts that, if true, would demonstrate the existence of an actual prospective contractual relation which, but for OptumCare's interference, would have been consummated." (Doc. 58 at 17 (citing *Anderson v. Dairyland Ins. Co.*, 637 P.2d 837, 84 (N.M. 1981)).) Gutierrez-Barela does not explicitly respond to this argument either. Her Counterclaim refers only to OptumCare's use of "improper means" and its "improper motive to interfere with [her] potential treatment of patients." (Answer & Countercl. ¶¶ 45–46.) Gutierrez-Barela does not point to facts in her Answer and Counterclaim or Amended Complaint alleging that OptumCare's conduct has actually prevented her from treating patients. On the contrary, she asserts that she is a practicing pediatrician in New Mexico and has been for 20 years. (Am. Compl. ¶¶ 1, 4.) She fails to adequately demonstrate, then, that OptumCare has interfered with her prospective contractual relationships. Accordingly, the Court will grant OptumCare's motion on Counterclaim I.

### B. Common Law Unfair Competition

Gutierrez-Barela alleges in Counterclaim II that OptumCare's conduct "constitutes common law unfair competition under the Restatement (Third) of Unfair Competition[,]" and both she and "New Mexico patients (consumers of health care services) have been damaged by" OptumCare's conduct. (Answer & Countercl. ¶¶ 49–50.)

"New Mexico courts generally rely on the definition set forth in the Restatement (Third) of Unfair Competition § 1 (Am. Law Inst. 1995) to define the elements of a common law unfair competition claim." *Purvis Indus., LLC v. Spokane Indus., Inc.*, No. 18-CV-00585 RB-LF, 2019 WL 1992911, at *9 (D.N.M. May 6, 2019) (citing *N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 54 F. Supp. 3d 1189, 1235–36 (D.N.M. 2014)). "The Restatement provides that '[o]ne who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other for such harm unless' the harm results from one of several enumerated sources, including deceptive marketing, trademark infringement, and misappropriation of trade values including trade secrets." *Id.* (quoting Restatement (Third) of Unfair Competition § 1(a)(1)–(3)). "In addition to these enumerated unfair practices, the Restatement also allows recovery under a 'residual category encompassing other business practices determined to be unfair.'" *Id.* (quoting Restatement (Third) of Unfair Competition § 1 cmt. g). "A claim under this residual provision is tied to harm resulting from 'other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public . . . .'" *Id.* (quoting Restatement (Third) of Unfair Competition § 1(a)).

OptumCare argues that the unfair competition counterclaim should be dismissed because Gutierrez-Barela failed to "reference a particular common law claim falling under the Restatement

(Third) Unfair Competition and therefore fails to give OptumCare sufficient notice of the claim(s) asserted against it." (Doc. 58 at 14.) OptumCare cites *Auge v. Striker Corp.*, Civ. No. 14-1089 KG/SMV, 2016 WL 3567047 (D.N.M. May 5, 2016), in support. In *Auge*, the plaintiff brought a claim for common law unfair competition under the Restatement (Third) Unfair Competition, but the "[c]omplaint [was] void of any reference to a particular common law claim under the Restatement . . . ." 2016 WL 3567047, at *7. The court ordered the plaintiffs "to file an amended complaint indicating factual allegations and the common law at issue in" the count. *Id.* The Court agrees that Gutierrez-Barela fails in her Answer and Counterclaim to specify the basis for this counterclaim.[4] (*See* Answer & Countercl. ¶¶ 48–50.) Further complicating the matter, she fails to specify any factual allegations underpinning the claim, choosing instead to "incorporate[] the allegations" from the entire pleading and vaguely asserting that "the conduct by Optum described above constitutes common law unfair competition . . . ." (Answer & Countercl. ¶¶ 48–49.)

The Counterclaim as written is insufficient to state a claim for relief, and the Court declines to fill in the gaps for Gutierrez-Barela. Should she decide to file a Second Amended Answer & Counterclaim to address this deficiency, she must file the pleading, specifying the section of the Restatement and the factual allegations in support of the claim, within **seven days** of this Opinion.

C. **New Mexico Antitrust Act**

The New Mexico Antitrust Act provides that "[e]very contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is unlawful." NMSA § 57-1-1. Gutierrez-Barela asserts that OptumCare's attempts to enforce the NCA are illegal, anti-competitive, and "constitute[] an unlawful restraint of trade." (Answer & Countercl. ¶¶ 53–54.) OptumCare first argues that Counterclaim III, which is based on the 2012

---

[4] Her clarification in her response brief that she brings this "claim under the residual category" of the Restatement is insufficient to save the counterclaim under these circumstances. (*See* Doc. 73 at 15–16.)

NCA, is time-barred by the NMAA's four-year statute of limitations. (Doc. 58 at 8 (citing N.M. Stat. Ann. § 57-1-12).) A claim accrues under the NMAA when "the plaintiff discovers, or should have discovered in the exercise of reasonable diligence, the facts that underlie his or her claim." *Butler v. Deutsche Morgan Grenfell, Inc.*, 140 P.3d 532, 539 (N.M. Ct. App. 2006) (citing N.M. Stat. Ann. § 57-1-12(B) ("applying discovery rule to antitrust claims"). OptumCare argues that Gutierrez-Barela's cause of action accrued in 2012 when she signed the purportedly unlawful agreement.[5] Gutierrez-Barela makes no argument and cites no authority to rebut this assertion, and the Court declines to manufacture the argument on her behalf out of whole cloth. The Court finds she has conceded that any claim based on the 2012 NCA is time-barred.

Gutierrez-Barela instead argues that her claim concerns "[t]he 2019 contract between DaVita and Optum attempting to bundle and sell a collection of 2012 physician noncompete agreements . . . ." (Doc. 73 at 9.) Critically, Gutierrez-Barela's argument regarding a 2019 contract is nowhere to be found in her Answer and Counterclaim. (*See* Doc. 54.) As such, she has not provided facts to support the grounds of her entitlement to relief.[6] *See Bell*, 550 U.S. at 556. The Court will grant the motion to dismiss Counterclaim III.

### D. Malicious Abuse of Prosecution

Finally, Gutierrez-Barela asserts that OptumCare filed this lawsuit "without a reasonable belief in the validity of the allegations of fact or law underlying the complaint" and with the

---

[5] An argument could also be made that Gutierrez-Barela had notice, at the latest, in 2015 when the state legislature "declared . . . that non-compete provisions that attempt to restrict the rights of a health care practitioner to provide clinical health care services in this state are unenforceable." (*See* Am. Compl. ¶ 15; Doc. 73 at 10 (alleging a violation of the NMAA "when DaVita purported to sell and assign the 2012 [NCA] to Optum *after* New Mexico law had already banned such agreements").)

[6] Because Gutierrez-Barela fails to allege facts regarding any 2019 agreement selling the 2012 NCA, the Court also agrees with OptumCare that Gutierrez-Barela fails sufficiently to allege that "'two or more entities that previously pursued their own interests separately . . . combin[ed] to act as one for their common benefit' in the restraint of trade." (Doc. 58 at 9 (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984)).)

primary motive of "prevent[ing her] . . . from treating New Mexico patients outside of Optum's health system, among other illegitimate ends." (Answer & Countercl. ¶¶ 56–57.) She contends that this conduct has injured her reputation and caused financial loss and constitutes malicious abuse of process. (*Id.* ¶ 58.) New Mexico courts define the tort of malicious abuse of process as: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Harvey v. THI of N.M. at Albuquerque Care Ctr., LLC*, No. 12-CV-727 MCA/LAM, 2015 WL 12659914, at *8 (D.N.M. Mar. 31, 2015) (quoting *Durham v. Guest*, 204 P.3d 19, 26 (N.M. 2009)). "[T]he malicious abuse of process tort is disfavored in the law because of the potential chilling effect on the right of access to the courts." *Id.* (quoting *Fleetwood Retail Corp. of N.M. v. LeDoux*, 164 P.3d 31, 37 (N.M. 2007)).

Only the first element is at issue. (*See* Doc. 58 at 6.) "An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) 'an irregularity or impropriety suggesting extortion, delay, or harassment[,]' or other conduct formerly actionable under the tort of abuse of process." *Durham*, 204 P.3d at 26 (quoting *Fleetwood*, 164 P.3d at 35). Gutierrez-Barela does not argue that OptumCare lacked probable cause. (Doc. 73 at 21–22.) Thus, she must base her claim on the second type of improper use of process—an irregularity or impropriety.

Gutierrez-Barela argues that OptumCare is only suing her "to accomplish an illegitimate end—to restrict competition[ and] to interfere with her business relations . . . ." (Doc. 73 at 21.) In other words, she asserts that OptumCare is only attempting to enforce the NCA to harass her. This allegation fits within the definition of an improper use of judicial proceedings (*i.e.*, an impropriety suggesting harassment), and the Court will allow it to remain. OptumCare's motion is denied with respect to Counterclaim IV.

9

## IV. Conclusion

In sum, the Court finds that Gutierrez-Barela's counterclaims are generally conclusory and fail to provide factual allegations sufficient to plausibly support them. Moreover, she failed in several respects to adequately respond to the arguments OptumCare set out in its motion. Accordingly, the Court will grant OptumCare's motion on three of the four counterclaims.

**THEREFORE**,

**IT IS ORDERED** that OptumCare's Motion to Dismiss Counterclaims (Doc. 58), is **GRANTED in part**: the Court dismisses Counterclaims I–III. The motion is otherwise **DENIED**, and Counterclaim IV remains.

**IT IS FURTHER ORDERED** that if Gutierrez-Barela wishes to move to file a Second Amended Answer and Counterclaim, she must file her motion pursuant to D.N.M. LR-15.1 within **seven** days of the entry of this Opinion.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE